# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

DUSTEX CORPORATION,

        Plaintiff,

vs.

BOARD OF TRUSTEES OF THE
MUNICIPAL ELECTRIC UTILITY OF
THE CITY OF CEDAR FALLS, IOWA,
MIRON CONSTRUCTION CO., INC.
and CONTINENTAL CASUALTY CO.,

        Defendants.

———————————————————

BOARD OF TRUSTEES OF THE
MUNICIPAL ELECTRIC UTILITY OF
THE CITY OF CEDAR FALLS, IOWA

        Counter Claimant,

vs.

DUSTEX CORPORATION,

        Counter Defendant.

No. 13-CV-2087-LRR

**ORDER**

———————————

## TABLE OF CONTENTS

I.      *INTRODUCTION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.     *PROCEDURAL HISTORY.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

III.    *SUBJECT MATTER JURISDICTION* . . . . . . . . . . . . . . . . . . . . . . . **3**

IV.   STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  **4**

V.   FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . .  **8**

VI.   SUMMARY OF ARBITRATION PANEL'S FINDINGS.. . . . . . . . . . . .  **14**

VII.   MOTION TO VACATE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  **16**

    A.   Iowa's Public Bidding Laws. . . . . . . . . . . . . . . . . . . . . . . . .  **17**
    B.   Condition Precedent. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  **17**
        1.   Parties' arguments. . . . . . . . . . . . . . . . . . . . . . . . .  **17**
        2.   Applicable law. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  **19**
        3.   Application. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  **20**
    C.   Prejudicial Conduct of the Arbitration Panel Chair. . . . . . . . . . .  **23**
        1.   Parties' arguments. . . . . . . . . . . . . . . . . . . . . . . . .  **23**
        2.   Analysis. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  **26**

VIII.  MOTION TO CONFIRM. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  **28**

XI.  CONCLUSION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  **28**

## I.  INTRODUCTION

The matters before the court are Plaintiff and Counter Defendant Dustex Corporation's ("Dustex") "Motion to Vacate Arbitration Award" ("Motion to Vacate") (docket no. 3) and Defendant and Counter Claimant Board of Trustees of the Municipal Electric Utility of the City of Cedar Falls, Iowa's ("CFU") "Motion to Confirm Arbitration Award" ("Motion to Confirm") (docket no. 23).

## II.  PROCEDURAL HISTORY

On December 30, 2013, Dustex filed a Complaint (docket no. 2) against CFU, Miron Construction Co., Inc. ("Miron") and Continental Casualty Company ("CNA"). On December 31, 2013, Dustex filed the Motion to Vacate.  On February 28, 2014, CFU filed the Motion to Confirm.  Also on February 28, 2014, Miron and CNA filed a "Memorandum in Support of [the] Motion to Vacate" ("Joinder in Motion to Vacate")

(docket no. 25), joining Dustex's Motion to Vacate.[1]  On March 3, 2014, CFU filed a Resistance to the Motion to Vacate (docket no. 27).  On March 7, 2014, Dustex filed a Reply to the Resistance to the Motion to Vacate (docket no. 28).  On March 14, 2014, Dustex filed a Resistance to the Motion to Confirm (docket no. 30).  On that same date, CFU filed a Resistance to Miron and CNA's Joinder in Motion to Vacate (docket no. 31).

On December 6, 2013, CFU filed a Motion to Confirm against Miron and CNA in *Board of Trustees of the Municipal Electric Utility of the City of Cedar Falls, Iowa v. Miron Construction Co., Inc. et al.*, case no. 13-CV-2080-LRR (docket no. 12).  On December 30, 2013, Miron and CNA filed a Motion to Vacate.  Case no. 13-CV-2080-LRR (docket no. 19).  On February 26, 2014, the court granted in part and reserved ruling in part the Motion to Confirm and denied the Motion to Vacate.  February 26, 2014 Order, Case no. 13-CV-2080-LRR at 28-29.  On that same date, the Clerk of Court entered judgment in favor of CFU and against Miron and CNA in the amount of $3,419,697.29; in favor of CFU and against Miron and CNA in the amount of $274,053.17; in favor of CFU and against Miron and CNA in the amount of $33,439.73; and in favor of Miron and CNA and against CFU in the amount of $420,872.96.  Judgment, case no. 13-CV-2080-LRR (docket no. 27).

### III.  SUBJECT MATTER JURISDICTION

The parties do not dispute that the court has diversity jurisdiction over the instant matter.  The parties to an arbitration agreement must have an affirmative agreement providing for judicial confirmation of an arbitration award for a federal court to have

---

[1] In the Brief in Support of the Joinder in Motion to Vacate (docket no. 25-2), Miron and CNA filed the same brief that they filed in *Board of Trustees of the Municipal Electric Utility of the City of Cedar Falls, Iowa v. Miron Construction Co., Inc. et al.*, case no. 13-CV-2080-LRR, in order to prevent any waiver.  *See* Motion to Vacate, case no. 13-CV-2080-LRR (docket no. 19).  The court has already addressed Miron and CNA's arguments in that case and, accordingly, will not revisit them here.  *See* case no. 13-CV-2080-LRR, February 26, 2014 Order (docket no. 26).

confirmation authority under 9 U.S.C. § 9. The Contract between CFU and Miron (docket no. 27-4) provides the following:

> All claims, disputes and other matters in question between [CFU] and [Miron] arising out of or relating to the Contract . . . or the breach thereof . . . will be decided by arbitration . . . . The award rendered by the arbitrators will be final, judgment may be entered upon it in any court having jurisdiction thereof.

Contract at 80. The court is satisfied that it has diversity jurisdiction over this case because complete diversity exists between the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332 ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ."). For purposes of diversity jurisdiction, CFU is a citizen of Iowa. Dustex is a North Carolina corporation with its principal place of business in Georgia. Miron is a Wisconsin corporation with its principle place of business in Neenah, Wisconsin. CNA is an Illinois corporation with its principle place of business in Chicago, Illinois.

## IV. STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") provides courts with the authority to confirm or vacate an arbitration award:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

9 U.S.C. § 9.  9 U.S.C. § 10 provides the "exclusive ground[]" for vacating an arbitration award.  *Hall Street Assocs. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008).  Section 10(a) provides:

> (a)  In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
>
> > (1)  where the award was procured by corruption, fraud, or undue means;
> >
> > (2)  where there was evident partiality or corruption in the arbitrators, or either of them;
> >
> > (3)  where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or any other misbehavior by which the rights of any party have been prejudiced; or
> >
> > (4)  where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

A court's review of a motion to vacate an arbitration award is limited to the grounds listed in § 10.  "Congress did not authorize *de novo* review of [an arbitration] award on its merits; it commanded that when the exceptions do not apply, a federal court has no choice but confirm."  *UHC Mgmt. Co., v. Computer Scis. Corp.*, 148 F.3d 992, 997 (8th Cir. 1998).  "[R]eview of an arbitration award under the Federal Arbitration Act is exceedingly limited and deferential."  *St. John's Mercy Med. Ctr. v. Delfino*, 414 F.3d 882, 884 (8th Cir. 2005).  A court may not "reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract."  *United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29,

36 (1987); *accord Med. Shoppe Int'l, Inc. v. Turner Inv., Inc.*, 614 F.3d 485, 488 (8th Cir. 2010) ("Courts have no authority to reconsider the merits of an arbitration award, even when the parties allege that the award rests on factual errors or on a misinterpretation of the underlying contract."). "'The district court affords the arbitrator's decisions an extraordinary level of deference and confirms so long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority.'" *Wells Fargo Bank, N.A. v. WMR e-PIN, LLC*, 653 F.3d 702, 710 (8th Cir. 2011) (quoting *Crawford Grp., Inc. v. Holekamp*, 543 F.3d 971, 976 (8th Cir. 2008)); *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010) ("It is not enough for petitioners to show that the [arbitration] panel committed an error—or even a serious error."); *McGrann v. First Albany Corp.*, 424 F.3d 743, 748 (8th Cir. 2005) ("The bottom line is '[w]e will confirm the arbitrator's award even if we are convinced that the arbitrator committed serious error, so long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority.'" (alteration in original) (quoting *Schoch v. InfoUSA, Inc.*, 341 F.3d 785, 788 (8th Cir. 2003))); *Ace Elec. Contractors, Inc. v. International Brotherhood of Electrical Workers, Local Union No. 292*, 414 F.3d 896, 899 (8th Cir. 2005) ("Where the parties have contemplated that an arbitrator will give meaning to the language of the contract and determine the remedies for the violations it finds, 'courts have no authority to disagree with [the arbitrator's] honest judgment' and a court may not reject an arbitrator's fact-findings or interpretation of contract 'simply because it disagrees with them.'" (alteration in original) (quoting *United Paperworkers International Union*, 484 U.S. at 38)); *Inter-City Gas Corp. v. Boise Cascade Corp.*, 845 F.2d 184, 187 (8th Cir. 1988) (providing that "contract interpretation is left to the arbitrator"). "A party seeking vacation of an award [under § 10(a)(3)] must demonstrate that the conduct influenced the outcome of the arbitration." *Delta Mine Holding Co. v. AFC Coal Properties, Inc.*, 280 F.3d 815, 822 (8th Cir. 2001); *see also M & A Elec.*

*Power Co-op v. Local Union No. 702, Int'l Broth. of Elec. Workers, AFL-CIO*, 977 F.2d 1235, 1238 (8th Cir. 1992) ("[A]n arbitrator's conduct must be such that a party can say that he was deprived of a fair hearing by the challenged conduct, and the party seeking a vacation of an award . . . must demonstrate that the conduct influenced the outcome of the arbitration.").

Section 10(a)(3) of the FAA allows a district court to vacate an arbitration decision "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy[,] or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). "To constitute misconduct requiring vacation of an award, an error in the arbitrator's determination 'must be one that is not simply an error of law, but which so affects the rights of a party that it may be said that he was deprived of a fair hearing.'" *El Dorado Sch. Dist. No. 15 v. Continental Cas. Co.*, 247 F.3d 843, 848 (8th Cir. 2001) (quoting *Grahams Serv. Inc. v. Teamsters Local 975*, 700 F.2d 420, 422 (8th Cir. 1982)).

Section 10(a)(4) of the FAA allows a district court to vacate an arbitration decision "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). However, "[a] party seeking relief under [9 U.S.C. § 10(a)(4)] bears a heavy burden." *Oxford Health Plans LLC v. Sutter*, __ U.S. __, __, 133 S. Ct. 2064, 2068 (2013). "[C]onvincing a court of an arbitrator's error—even his grave error—is not enough" for a court to vacate an arbitration decision. *Id.* at 2070. "So long as the arbitrator was 'arguably construing' the contract . . . a court may not correct his mistakes under § 10(a)(4)." *Id.* (quoting *E. Associated Coal Corp. v. United Mine Workers of America, District 17*, 531 U.S. 57, 62 (2000)). "It is only when [an] arbitrator strays from interpretation and application of the agreement and effectively dispense[s] his own brand of industrial justice that his decision may be unenforceable." *Stolt-Nielsen S.A.*, 559 U.S. at 671 (alterations in original) (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001))

(internal quotation marks omitted). "The potential for those mistakes is the price of agreeing to arbitration." *Oxford Health Plans LLC*, __ U.S. __, 133 S. Ct. at 2070. "'It is the arbitrator's construction [of the contract] which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.'" *Id.* (alteration in original) (quoting *United Steelworkers of America v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599 (1960)). Moreover, "[a]rbitrators are not required to elaborate their reasoning supporting an award, and to allow a court to conclude that it may substitute its own judgment for the arbitrator's whenever the arbitrator chooses not to explain the award would improperly subvert the proper functioning of the arbitral process." *Stroh Container Co. v. Delphi Indus., Inc.*, 783 F.2d 743, 750 (8th Cir. 1986) (citation omitted) (citing *Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211, (2d Cir. 1972) ("[F]orcing arbitrators to explain their award . . . will unjustifiably diminish whatever efficiency the process now achieves.")).

## V. FACTUAL BACKGROUND

The court accepts the arbitration panel's findings of facts. *See* Arbitration Award (docket no. 3-5) at 1-5. The facts of this case are summarized as follows:

The underlying dispute arises from a project to furnish a new filter system for the exhaust-gas stream from a stoker-fired boiler (Unit #6) ("the project"). CFU entered into a contract with Brown Engineering Co. ("Brown") on April 13, 2005, for Brown to "provide professional services relating to the engineering design and construction management involved in a project to install a fabric filter (baghouse) on Streeter Unit 6." Cedar Falls Utilities Professional Services Agreement (docket no. 3-6) at 1.

In 2006, CFU initiated public bidding for a contractor to build the project. Miron submitted a bid that included a proposal from Dustex, its subcontractor. On August 10, 2006, CFU entered into the Contract with Miron to complete the project for a price of

$3,350,000 based on the drawings and specifications that Brown created. Arbitration Award at 2. The Contract provides that Miron, referred to as CONTRACTOR in the Contract, shall

> complete all Work as specified in the Contract Documents. The Work is generally described as follows: streeter station unit no. 6 environmental upgrade—fabric type dust collector addition[.]

Contract at 1 (emphasis omitted). In addition, the Contract states:

> The Project has been designed by the engineering staff of Brown Engineering Company, Des Moines, Iowa, who are hereinafter called ENGINEER and who assumes all duties and responsibilities and have the rights and authority assigned to ENGINEER in the Contract Documents in connection with completion of the Work in accordance with the Contract Documents.

*Id.* The Contract Documents "comprise the entire agreement" between CFU and Miron, consisting of the eleven items enumerated in the Contract. *Id.* at 4.

The Contract Documents also provide for the resolution of "[a]ll claims, disputes and other matters in question between [CFU] and [Miron] arising out of or relating to the Contract Documents or the breach thereof" to be "decided by arbitration." *Id.* at 80. Additionally, "[t]he award rendered by the arbitrators will be final, judgment may be entered upon it in any court having jurisdiction thereof, and it will not be subject to modification or appeal." *Id.*

In addition, and relevant to the Motion to Vacate and the Motion to Confirm, the Contract provides the following:

> 6.9.1. . . . Nothing in the Contract Documents shall create for the benefit of any . . . Subcontractor . . . any contractual relationship between OWNER or ENGINEER and any such Subcontractor . . . nor shall it create any obligation on the part of OWNER or ENGINEER to pay or to see to the payment of any moneys due to any such subcontractor . . . .

. . .

9.11.  ENGINEER will be the initial interpreter of the requirements of the Contract Documents and judge of the acceptability of the Work thereunder.  Claims, disputes and other matters relating to the acceptability of the Work or the interpretation of the Work or the interpretation of the requirements of the Contract Documents pertaining to the performance and furnishing of the Work and Claims under Articles 11 and 12 in respect of changes in the Contract Price or Contract Times will be referred initially to ENGINEER in writing with a request for a formal decision in accordance with this paragraph.  Written notice of each such claim, dispute or other matter will be delivered by the claimant to ENGINEER and the other party to the Agreement promptly (but in no event later than thirty days) after the start of the occurrence or event giving rise thereto, and written supporting data will be submitted to ENGINEER and the other party within sixty days after the start of such occurrence or event unless ENGINEER allows an additional period of time for the submission of additional or more accurate data in support of such claim, dispute or other matter. . . .  ENGINEER's written decision on such claim, dispute or other matter will be final and binding upon OWNER and CONTRACTOR unless: (i) an appeal from ENGINEER's decision is taken within the time limits and in accordance with the procedures set forth in EXHIBIT GC-A, "Dispute Resolution agreement," entered into between OWNER and CONTRACTOR pursuant to Article 16, or (ii) if no such Dispute Resolution Agreement has been entered into, a written notice of intention to appeal from ENGINEER's written decision is delivered by OWNER or CONTRACTOR to the other and to ENGINEER within thirty days after the date of such decision and a formal proceeding is instituted by the appealing party in a forum of competent jurisdiction to exercise such rights or remedies as the appealing party may have with respect to such claim, dispute or other matter in accordance with applicable Laws and Regulations within sixty days of the date of such decision, unless otherwise agreed in writing by OWNER and CONTRACTOR.

9.12.  . . .  The rendering of a decision by ENGINEER pursuant to paragraphs 9.10 and 9.11 with respect to any such claim, dispute or other matter . . . will be a condition precedent to any exercise by OWNER or CONTRACTOR of such rights or remedies as either may otherwise have under the Contract Documents or by Laws or Regulations in respect of any such claim, dispute or other matter pursuant to Article 16.

. . .

16.2.  No demand for arbitration of any claim, dispute or other matter that is required to be referred to ENGINEER initially for decision in accordance with paragraph 9.11 will be made until the earlier of (a) the date on which ENGINEER has rendered a written decision or (b) the thirty-first day after the parties have presented their evidence to ENGINEER if a written decision has not been rendered by ENGINEER before that date.  No demand for arbitration of any such claim, dispute or other matter will be made later than thirty days after the date on which ENGINEER has rendered a written decision in respect thereof in accordance with paragraph 9.11; and the failure to demand arbitration within said thirty days' period will result in ENGINEER's decision being final and binding upon OWNER and CONTRACTOR.  If ENGINEER renders a decision after arbitration proceedings have been initiated, such decision may be entered as evidence but will not supersede the arbitration proceedings, except where the decision is acceptable to the parties concerned. . . .

. . .

16.5.  Notwithstanding paragraph 16.4[,] if a claim, dispute or matter in question between OWNER and CONTRACTOR involves the Work of a Subcontractor, either OWNER or CONTRACTOR may join such Subcontractor as a party to the arbitration between OWNER and CONTRACTOR hereunder. . . .

Contract at 62, 68, 80.

On February 2, 2007, Miron and Dustex entered into a Purchase Agreement for Dustex's work on the project. Purchase Agreement (docket no. 27-5). Dustex agreed to build the critical component of the filter system, the dust collection "baghouse," which is a series of hundreds of sixteen-inch, tube-shaped filters housed in four steel modules. The baghouse system includes a sophisticated, automated air system to pulse clean subsets of bag filters while the balance remains in operation. Dustex sized the components of the proprietary filter system based on a performance specification contained in the Contract Documents. In addition, Dustex elected to produce a bottom-flow, rather than a cross-flow, design for the pulse-cleaning system. When the filter bags clog with ash, the upstream exhaust steam pressure increases until it reaches levels unsafe for boiler operation and shuts down the boiler and associated generator. The effectiveness of a fixed filter area is dependent on several factors, including the volume of exhaust gas that must be processed per minute of operation.

The Contract Documents set forth the design parameters for the system and anticipated four equally sized filter modules, one of which was designated as a spare to allow for off-line maintenance and cleaning. The Contract required capacity for any three modules to accommodate the gas volume anticipated by CFU as provided for in the Contract Documents. In addition, the Contract Documents required Miron to size all equipment in the system, including the baghouse, for a maximum flue-gas flow rate of 93,000 actual cubic feet per minute ("ACFM"). The Contract Documents also required Miron to guarantee baghouse performance based on specific fuel, inlet dust loading and a flue-gas flow of 80,000 ACFM at 350 degrees Fahrenheit. The baghouse was required to operate under those conditions with a maximum draft loss, or differential pressure, of six inches w.g. (water gauge) before cleaning and at 99% particulate collection efficiency. The Contract Documents further required Miron to hire a third party to conduct performance tests of the system after thirty days or more of continuous operation of the

baghouse. There is no evidence that Miron ever hired a third party to conduct such testing and no performance test was ever run after thirty continuous days of baghouse operation.

In the Purchase Agreement, Dustex intended and agreed to satisfy the performance guarantee with three modules on-line and a fourth module serving as a spare.

The project was completed in the summer of 2007, however, it has never operated to CFU's satisfaction. CNA underwrote a performance bond assuring Miron's performance to CFU with a penal sum of $3,350,000. Accordingly, CNA is subject to the same claims and defenses as its principal, Miron. Arbitration Award at 2.

On August 18, 2009, Miron filed a Demand for Arbitration/Mediation Form (docket no. 27-6), asserting a claim against CFU for $475,000 in damages, the unpaid amount on the Contract. On September 2, 2009, CFU filed an Answering Statement (docket no. 27-7) denying Miron's claim and asserting a counter claim for $1,461,000 in damages. On December 3, 2010, CFU filed a Petition (docket no. 3-4) in the Iowa District Court for Black Hawk County, Case No. EQCV114721, seeking to compel Dustex to join the arbitration action, which the Iowa District Court for Black Hawk County granted. On July 5, 2011, the American Arbitration Association ("AAA") sent counsel for Miron, CFU and Dustex a letter (docket no. 27-12) listing the roster of arbitrators and their resumes from which the parties could select a panel of three arbitrators and noting that, absent an agreement of the parties, "each party shall independently strike the names objected to, number the remaining names in order of preference and return the list to the [AAA]." July 5, 2011 Letter at 2. The July 5, 2011 Letter further stated that if the parties failed to reach an agreement or return the list by the deadline, "the arbitrators will be appointed as authorized in the Rules." *Id.* On October 17, 2011, the AAA sent counsel for Miron, CFU and Dustex a letter (docket no. 27-13) providing the parties with a second list of arbitrators to select from. On December 16, 2011, the AAA sent counsel for Miron, CFU and Dustex a letter (docket no. 27-14) stating that it had "appointed Jerome V. Bales,

Wyatt A. Hoch, and Marshall P. Young as arbitrators." December 16, 2011 Letter at 1. In addition, the December 16, 2011 Letter directed the parties to "advise the [AAA] of any objections to the appointment of" the arbitrators. *Id.* No party objected to the appointment of the arbitrators at any point during the proceedings.

On May 15, 2012, CFU filed a Second Amended Statement of Claims (docket no. 27-19) seeking damages in "an amount in excess of $2,000,000," as well as liquidated damages. Second Amended Statement of Claims at 5. On December 7, 2012, CFU filed a Third Amended Statement of Claims (docket no. 27-26) seeking damages "in an amount in excess of $6,500,000," as well as liquidated damages. Third Amended Statement of Claims at 5. The arbitration hearing began on January 21, 2013, and the panel heard evidence from January 21 through January 25, 2013; January 28 through January 29, 2013; April 21 through April 23, 2013 and August 26 through August 27, 2013. CFU submitted a Post-Hearing Brief on October 8, 2013 (docket no. 27-41). On that same date, Miron and CNA also submitted a Post-Hearing Brief (docket no. 27-42).

## VI. SUMMARY OF ARBITRATION PANEL'S FINDINGS

On November 6, 2013, the panel of AAA arbitrators issued an Arbitration Award in favor of CFU. The panel made the following findings:

First, with respect to CFU's claims against Miron, the panel found Miron liable to CFU for $274,053.17 in liquidated damages and $33,439.63 for automation of the ash conveyancing system. In addition, the panel found that Dustex, Miron's subcontractor, intended and agreed to install four equally sized filter modules, one of which was designated as a spare to allow for off-line maintenance and cleaning. Second, the panel found that Miron breached the Contract with CFU because: (1) Dustex sized the baghouse for a gas flow rate of 80,000 ACFM, below the 93,000 ACFM rate that the Contract required; and (2) Dustex admitted that the baghouse as installed needed to operate with all four modules on-line, rather than with three and one spare, to comply with the Contract.

Third, the panel found that Miron breached an express warranty in the Contract that "all Work will be in accordance with the Contract Documents and will not be defective," Contract at 65 (emphasis omitted), and is liable to CFU pursuant to this alternative theory. Finally, the panel found that Miron is entitled to a credit from CFU for $420,872.96, the unpaid balance on the Contract.

Next, the panel addressed CFU's claims against Dustex. First, the panel found that CFU is an intended third-party beneficiary of the Purchase Agreement between Miron and Dustex. The panel found that Dustex breached the Purchase Agreement because the baghouse that it installed did not conform with the specifications set forth in the Contract. Second, the panel found that CFU is entitled to damages against Dustex because Dustex breached the indemnification provision of the Purchase Agreement and the indemnification provision of the Contract that was incorporated into the Purchase Agreement, which requires Dustex to indemnify CFU. The Purchase Agreement includes an indemnification provision that provides:

> To the fullest extent permitted by law, [Dustex] agrees to hold harmless and defend [CFU] and Miron . . . from any and all claims, demands, and judgments, including attorney's fees, and to indemnify and reimburse [CFU] and Miron . . . for any and all expenses, damage, or liability incurred by [CFU] or Miron . . . , whether directly or indirectly caused in whole or in part by [Dustex], on account of or in connection with any material furnished by [Dustex] under this [Purchase] Agreement, or by any person, firm, or corporation to whom any portion of the material is let or sublet by [Dustex].

Purchase Agreement at 9. The Contract, incorporated into the Purchase Agreement by reference, also requires Dustex to indemnify CFU for all "claims, costs, losses and damages" resulting from any defective work. Contract at 74. These costs include "all fees and charges of engineers, architects, attorneys and other professionals and all court or arbitration or other dispute resolution costs." *Id.* at 79. Accordingly, the panel found

that CFU is entitled to recover damages resulting from Dustex's breach of these indemnification provisions. The panel also found that CFU is not entitled to recover against Dustex on theories of equitable indemnity or professional negligence.

Finally, the panel provided its damages calculations. The panel found that CFU is entitled to recover the following damages from Miron and CNA: (1) $274,053.17 in liquidated damages; (2) $33,439.63 that was spent to hire another contractor to complete automation of the ash conveying system that Miron left unfinished; (3) $3,419, 697.29 to correct the baghouse; and (4) less the remaining $420,872.96 that CFU did not pay Miron under the Contract, resulting in a total damages amount of $3,306,317.13. The panel found that CFU is entitled to recover from Dustex, jointly and severally with Miron and CNA, $3,419,697.29 to correct the baghouse. Finally, the panel held that Miron and Dustex must pay $171,114.88 for the AAA's fees and expenses and $23,350.00 for the AAA's administrative fees and expenses. The panel provided that Miron, Dustex and CNA must pay the award within ten days after the date that the last arbitrator signed the Arbitration Award, which was on November 6, 2013.

## VII. MOTION TO VACATE

At the outset, the court notes that it "ha[s] no authority to reconsider the merits of an arbitration award, even when the parties allege that the award rests on factual errors or on a misinterpretation of the underlying contract." *Med. Shoppe Int'l, Inc.*, 614 F.3d at 488. Rather, as discussed above, the court may only vacate the Arbitration Award for the reasons enumerated in 9 U.S.C. § 10. Dustex asserts that the court should vacate the Arbitration Award: (1) because it violates public policy; (2) pursuant to 9 U.S.C. § 10(a)(4), which provides that the court may vacate an award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made," 9 U.S.C. § 10(a)(4); and (3) pursuant to 9 U.S.C. § 10(a)(3), which provides that the court may vacate an award

"where the arbitrators were guilty . . . in refusing to hear evidence pertinent and material to the controversy[,] or of any other misbehavior by which the rights of any party have been prejudiced," *id.* § 10(a)(3). The court shall address each argument in turn.

## A. Iowa's Public Bidding Laws

In the Motion to Vacate, Dustex argues that the court should vacate the Arbitration Award because it is contrary to Iowa's public bidding law. Miron and CNA raised this issue in their Motion to Vacate and the court fully addressed and rejected this argument in its February 26, 2013 Order and finds it unnecessary to address it again. *See* February 26, 2013 Order, case no. 13-CV-2080-LRR at 13-22. Accordingly, for the reasons more fully explained in the February 26, 2013 Order, the Motion to Vacate is denied to the extent that it contends that the court should vacate the Arbitration Award because it is contrary to Iowa's public bidding law.

## B. Condition Precedent

### 1. Parties' arguments

In the Motion to Vacate, Dustex contends that the court should vacate the Arbitration Award pursuant to 9 U.S.C. § 10(a)(4) because CFU failed "to follow the condition precedent set forth in the contract documents," Brief in Support of the Motion to Vacate (docket no. 3-1) at 6, and thereby "exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter was not made," 9 U.S.C. § 10(a)(4). According to Dustex, the Contract required CFU to take the dispute to and request a formal decision from Brown, and only once Brown rendered a decision was CFU permitted to appeal that decision to the arbitration panel. However, CFU did not seek a decision from Brown before filing its claim to the arbitration panel on September 2, 2009. Rather, CFU submitted a letter to Brown on April 5, 2010 (docket no. 3-14), which Brown responded to in an August 13, 2010 letter (docket no. 3-16). Because CFU failed to comply with the condition precedent in the Contract, Dustex argues

that the arbitration panel could not properly hear the dispute and the court should vacate the Arbitration Award. Brief in Support of the Motion to Vacate at 12 ("The [arbitration] [p]anel had no jurisdiction over improperly submitted claims against Dustex and the claims should have been dismissed. The [p]anel exceeded its powers by exercising jurisdiction over claims that were not brought in conformity with the contract documents."). Dustex further contends that it preserved this issue because it raised it to the arbitration panel. *See* Dustex Motion for Summary Judgment (docket no. 3-11) at 4-11. However, the arbitration panel summarily denied Dustex's Motion for Summary Judgment without addressing the merits. *See* December 19, 2012 Arbitration Panel Decision (docket no. 3-12) at 1. Dustex again raised this issue in its Post-Hearing Brief (docket no. 3-13), but the arbitration panel did not address it in the Arbitration Award.

In the Resistance to the Motion to Vacate, CFU makes several arguments in support of its contention that the court should deny the Motion to Vacate. First, CFU argues that it satisfied the condition precedent because the Contract permitted it to seek a formal decision from Brown at any time and, thus, Brown's August 13, 2010 letter satisfied the condition precedent. According to CFU, the fact that Brown's "decision was rendered after the initiation of arbitration proceedings does not mean the condition precedent was not satisfied." Resistance to the Motion to Vacate at 24-25. Second, CFU argues that Dustex lacks standing to enforce any condition precedent in the Contract because Dustex is not a party or a third-party beneficiary to the Contract. Third, CFU argues that the Contract contemplates an engineer's (Brown) decision before the owner (CFU) or contractor (Miron) initiate arbitration against one another, but does not require an engineer's decision before CFU initiates arbitration against a subcontractor (Dustex). Fourth, CFU argues that it and Miron were permitted to join Dustex to the arbitration without Brown's decision pursuant to paragraph 16.5 of the Contract. Finally, CFU asserts that it sought Brown's decision at the appropriate time, in August 2010, after

testing revealed that Unit No. 6 failed to meet the performance guarantee and CFU, Miron and Dustex "reached an impasse." *Id.* at 29.

### 2. Applicable law

Generally, the failure to satisfy a contractually agreed upon condition precedent precludes later litigation on a dispute under the contract. *Cameo Homes v. Kraus-Anderson Const. Co.*, 394 F.3d 1084, 1088 (8th Cir. 2005) (holding that, where the plaintiff failed to give written notice to an architect of its breach of contract claims against the defendant, a condition precedent required under the contract, the plaintiff was "contractually barred" from litigating the claim). "Where contracting parties condition an arbitration agreement upon the satisfaction of some condition precedent, the failure to satisfy the specified condition will preclude the parties from compelling arbitration and staying proceedings under the FAA." *HIM Portland, LLC v. DeVito Builders, Inc.*, 317 F.3d 41, 44 (1st Cir. 2003) (affirming the district court's denial of the plaintiff's motion to compel arbitration).

However, "[u]nlike the question whether a federal court has jurisdiction over a claim, the question of whether the contractual prerequisites to arbitration have been fulfilled are 'procedural requirements that go to the heart of the dispute' and do not alter the parties' contractual obligations to arbitrate." *El Dorado Sch. Dist. No. 15*, 247 F.3d at 847 (quoting *Contracting Nw., Inc. v. City of Fredericksburg*, 713 F.2d 382, 386 (8th Cir. 1983)). In *El Dorado Sch. Dist. No. 15*, the Eighth Circuit Court of Appeals affirmed the district court's confirmation of an arbitration award in favor of a plaintiff school district and against a defendant contractor and surety where the contract from which the dispute arose provided that "disputes would first be submitted in writing to the architect, and, if the parties were not satisfied with the architect's resolution . . . , would then be subject to binding arbitration." *Id.* at 845. In that case, the defendants contended that the arbitrator lacked jurisdiction because the school district failed to submit the written claim

to the architect, an argument that the defendants raised to the arbitrator but which the arbitrator denied. *Id.* at 846. The Eighth Circuit held that the issue of whether a condition precedent has been satisfied is procedural, rather than substantive, noting that it "must . . . accord even greater deference to the arbitrator's decisions on procedural matters than those bearing on substantive grounds" and, given the very deferential standard afforded to arbitrators on substantive matters, "it is difficult to articulate a standard of even lesser scope to apply for procedural challenges." *Id.* at 846-47 (quoting *Stroh Container Co.*, 783 F.2d at 748-49); *see also John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964) ("Once it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute . . . should be left to the arbitrator."); *Contracting Nw., Inc.*, 713 F.2d at 385 ("[W]hether the failure to meet any procedural prerequisite will bar recovery [is] for the arbitrator to decide."); *Stroh Container Co.*, 783 F.2d at 749 ("In translating this rule of deference into a standard of review, we must therefore accord even greater deference to the arbitrator's decisions on procedural matters than those bearing on substantive grounds."). Thus, in *El Dorado Sch. Dist. No. 15*, even though "neither the arbitrator nor the district court made an express finding of fact that the condition precedent had been met," the Eighth Circuit nonetheless affirmed the district court's confirmation of the arbitration award because the defendants "raised these issues to the arbitrator . . . and the arbitrator rejected them," and the arbitrator's finding did not "indicate a manifest disregard for the law." *El Dorado Sch. Dist No. 15*, 247 F.3d at 847.

### 3. Application

Miron initiated the underlying action on August 18, 2009, by filing an arbitration demand against CFU. Miron did not present its claim to Brown.[2] On September 2, 2009,

---

[2] The court notes that, although the arbitration was initiated by Miron, the record
(continued…)

CFU filed a counterclaim against Miron. On August 5, 2010, Tom Risse of CFU presented its claim to Terry Martin of Brown. In the August 5, 2010 letter, CFU sought Brown's opinion on several issues, including "[w]hether the contract specifications require the baghouse have a spare module which would allow for off-line cleaning and/or maintenance of one module, while the remaining modules continued to operate up to the level of 80,000 acfm" and "[w]hether the baghouse as constructed meets the contract specifications." August 5, 2010 letter at 1. On August 13, 2010, Martin sent a response letter to CFU, stating that Brown "do[es] not believe that the fabric filter provided by Dustex and installed by Miron for the project meets all of the significant requirements called for in the Technical Specifications in the Project Manual" and that "a Certificate of Substantial Completion can [not] be issued at this time." August 13, 2010 letter at 2-3. On December 3, 2010, CFU filed a Petition in Black Hawk County, Iowa, seeking to compel Dustex to join the arbitration.

The parties dispute whether the August 2010 exchange between CFU and Brown satisfied the condition precedent in the Contract. Whether the condition precedent was satisfied is a procedural issue that Dustex presented to the arbitration panel. *See* Dustex Motion for Summary Judgment at 4-11. However, the arbitration panel rejected Dustex's argument. *See* December 19, 2012 Arbitration Panel Decision. There is no requirement that the arbitration panel further expound on their reasoning or analysis. *See El Dorado Sch. Dist. No. 15*, 247 F.3d at 847 ("Arbitrators 'are not required to elaborate their reasoning supporting an award.'" (quoting *Stroh Container Co.*, 783 F.2d at 750)). The court disagrees with Dustex's contention that, if the condition precedent was not satisfied,

---

[2](...continued)
indicates that Miron failed to satisfy the condition precedent because it never presented its claim to Brown and Miron's claim that CFU owed it money under the Contract is a "[c]laim [or] dispute[] . . . relating to . . . the interpretation of the requirements of the Contract Documents." Contract at 68.

21

the court should vacate the Arbitration Award because the arbitration panel lacked jurisdiction. As the Eighth Circuit stated in *El Dorado School Dist. No. 15*, in a case with similar facts to those in the instant matter, "the question of whether contractual prerequisites to arbitration have been fulfilled are 'procedural requirements that go to the heart of the dispute' and do not alter the parties' contractual obligations to arbitrate," "[u]nlike the question of whether a federal court has jurisdiction." *Id.* (quoting *Contracting Nw. Inc.*, 713 F.2d at 386).

Because the issue of whether the condition precedent was satisfied is a procedural issue—not a substantive issue—the arbitrators' decision is entitled to even more deference than it would receive were this an issue of substantive arbitrability. *Stroh Container Co.*, 783 F.2d at 749 ("[W]e must . . . accord even greater deference to the arbitrator's decisions on procedural matters than those bearing on substantive grounds."). Moreover, the issue here is whether the court should *vacate* the Arbitration Award, *not* whether the court should preclude the parties from compelling arbitration. *Cf. HIM Portland, LLC*, 317 F.3d at 44. Therefore, because: (1) the arbitration panel rejected the argument that Dustex asserts now—that CFU failed to satisfy the condition precedent and the arbitration panel lacked jurisdiction over the dispute; (2) there is no requirement that the arbitration panel provide reasons for its decisions; and (3) procedural issues are to be left to the arbitration panel, the court finds that there is no reason to disrupt the arbitration panel's decision on this ground. Accordingly, the Motion to Vacate is denied to the extent it requests that the court vacate the Arbitration Award because CFU failed to satisfy the condition precedent in the Contract. *See Stroh Container Co.*, 783 F.2d at 749 ("We hold . . . that the procedural issues were properly decided by the arbitrators based on their own conclusion that the matter was properly before them.").

## C. Prejudicial Conduct of the Arbitration Panel Chair

### 1. Parties' arguments

In the Motion to Vacate, Dustex contends that the court should vacate the Arbitration Award because Marshall Young, the chair of the arbitration panel, exhibited prejudicial conduct that deprived Dustex of a fair hearing, pursuant to 9 U.S.C. § 10(a)(3). Motion to Vacate at 1 ("Dustex further asserts that the arbitrators were guilty of misconduct and other misbehavior that prejudiced the rights of Dustex and the award should be vacated as provided by 9 U.S.C. § 10[a](3)."). Dustex asserts that Young was appointed by the AAA and that it "never had the opportunity to reject or accept . . . Young as a member of [the] [p]anel." Brief in Support of the Motion to Vacate at 14. Dustex puts forth several specific arguments with respect to its contention that the court should vacate the Arbitration Award on this ground.

First, Dustex argues that Young "suffered from a profound hearing loss" that prejudiced Dustex because he ruled on all of Dustex and Miron's objections and motions and "routinely denied [them] simply because he could not hear the objection." *Id.* Dustex's counsel had to appeal to the other two members of the arbitration panel "[o]n three occasions during the first week of testimony" because "counsel was unsuccessful in eliciting any verbal response from . . . Young." *Id.* Second, Dustex contends that, although its defense was very complex, "[t]here was not a single occasion during the hearings in January 2013 or afterwards in which . . . Young opened his exhibit notebook(s) in order to follow along with direct or cross-examination testimony." *Id.* at 15. Third, Dustex contends that Young "refused to permit Dustex to cross-examine a witness . . . by asking the witness to explain inconsistent performance data" because his "hearing loss prevented him from understanding the nature and relevance of the prior data" and "simply

ruled that the examination in question was 'not at issue' or 'irrelevant.'" *Id.*[3] Fourth, Dustex contends that Young would sleep during the arbitration hearings and that, "primarily during the late mornings and late afternoons, . . . Young would close his eyes and remain motionless for minutes at a time. During one such incident late into the first week of the January hearing, . . . Young appeared to be unresponsive for approximately twenty minutes." *Id.* at 17. Fifth, Dustex argues that it was "prejudiced by the absence of any note-taking by . . . Young, who must [have] subsequently rel[ied] on either his memory of what little testimony he may have heard or notations prepared by someone other than himself." *Id.* Sixth, Dustex contends that, even at the end of all of the hearings before the arbitration panel, Young could not distinguish among counsel for Dustex and counsel for the other parties. Finally, Dustex contends that Young cross-examined Brian Kalata, an engineer at Dustex, "as if advocating for CFU" and that Young had already made up his mind before the parties had presented all of the evidence. *Id.* at 19. Additionally, Dustex contends that this line of questioning from Young shows his "fundamental misunderstanding of the plain language in the contract as well as the testimony and admissions of the witnesses." *Id.* at 20.

In the Resistance to the Motion to Vacate, CFU argues that the court should deny the Motion to Vacate on this ground because Young's conduct over the course of the arbitration proceedings did not prejudice Dustex. First, CFU contends that Young "had a sophisticated understanding of the testimony and exhibits presented" as evidenced by "a series of pointed questions" that Young asked Dustex's final witness, demonstrating "a detailed understanding of the Contract Documents." Resistance to the Motion to Vacate at 32. Second, CFU argues that Dustex waived any complaints about Young by never

_____

[3] Dustex claims that it was prejudiced because of Young's hearing when it tried to cross-examine Terry Martin, an engineer and the chief executive officer of Brown and when it questioned Dr. John McKenna, Dustex's expert witness.

objecting in writing over the course of the arbitration proceedings. Third, CFU contends that Young never engaged in prejudicial conduct because, in arbitration proceedings, the arbitrator is afforded "preference to hear all relevant evidence and consider its weight." *Id.* at 35. Moreover, CFU asserts that "Dustex has not identified any violations of the AAA Construction Rules, such as the exclusion of evidence that should have been admitted, to support vacating the [Arbitration] [A]ward." *Id.* Fourth, CFU contends that Young exhibited no bias[4] over the course of the arbitration proceedings because "Dustex cannot establish evident partiality or corruption as a basis for vacating the [A]rbitration [A]ward." *Id.* at 36. Fifth, CFU contends that Dustex participated in the selection of the arbitration panel to the same extent as CFU and to the extent permitted by the AAA, that "Dustex struck every single name on the first list of potential arbitrators circulated by the AAA" and, accordingly, pursuant to AAA Construction Rule 14, the AAA had the authority to appoint a panel without the submission of additional lists since the parties failed to agree on a panel. *Id.* at 37. According to CFU, "[t]here is no right under the AAA Construction Rules to strike appointments by the AAA after the parties have failed to reach an agreement" as to the composition of the arbitration panel. *Id.* Sixth, CFU argues that Young was attentive, took notes and did not sleep when the parties presented evidence and Dustex was not limited in its examination or cross-examination of any witnesses. Finally, CFU argues that Dustex has a credibility deficit because "Tim Lewis, Dustex's [p]roject [m]anager, forwarded an 'altered' report to CFU." *Id.* at 42. CFU also points to conflicting testimony regarding the color of the fly ash on the bags from CFU's stoker-fire boiler.

---

[4] The court notes that Dustex does not seek relief pursuant to 9 U.S.C. § 10(a)(2), which authorizes vacatur "where there was evident partiality or corruption in the arbitrators." 9 U.S.C. § 10(a)(2). Thus, CFU's argument on this point is irrelevant.

## 2. *Analysis*

The parties raise numerous arguments related to Young's alleged prejudicial conduct. However, the court finds no reason to address each of Dustex's arguments on this ground because Dustex fails to articulate how its allegations actually prejudiced it to justify relief under 9 U.S.C. § 10(a)(3). Additionally, the court finds no basis to support a finding that Young's conduct prejudiced Dustex.[5]

As discussed above, 9 U.S.C. § 10(a)(3) of the FAA allows a district court to vacate an arbitration award "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy[,] or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). "To constitute misconduct requiring vacation of an award, an error in the arbitrator's determination 'must be one that is not simply an error of law, but which so affects the rights of a party that it may be said that he was deprived of a fair hearing.'" *El Dorado Sch. Dist. No. 15*, 247 F.3d at 848 (quoting *Grahams Serv. Inc.*, 700 F.2d at 422); *see also Sherrock Bros., Inc. v. DaimlerChrysler Motors Co.*, 260 F. App'x 497, 501 (3d Cir. 2008) ("The statute . . . 'cannot be read . . . to intend that every failure to receive relevant evidence constitutes misconduct which will require the vacation of an arbitrator's award.'" (second alteration in original) (quoting *Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 500 (3d Cir. 1968)). Furthermore, "by agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).

---

[5] In light of the court's finding that Dustex's argument fails on the merits, the court also finds it unnecessary to address CFU's argument that Dustex waived any objection to Young because Dustex did not preserve this argument by raising it in writing during the arbitration.

The court finds that it cannot be said that Young's behavior deprived Dustex of a fair hearing. The arbitration panel heard evidence over the course of twelve days. Dustex makes various arguments asserting that Young did not hear or understand evidence that it presented over the course of the arbitration proceeding, but it provides no legal authority that supports a finding that this behavior deprived it of a fair hearing. Moreover, the record indicates that Young actively listened to the evidence and, when he felt appropriate, asked witnesses additional questions. Even if Dustex were able to show that Young slept while Dustex presented some of its evidence or did not understand the evidence, this would not necessarily warrant relief under 9 U.S.C. § 10(a)(3), which provides that the district court may vacate an arbitration award "where the arbitrators . . . refuse[d] to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3). Here, Dustex was allowed to present all of its evidence and does not argue that it was prevented from offering any evidence. Even if one arbitrator did not hear all of the evidence because he either did not understand it or was sleeping when it was presented, Dustex presented all of the evidence it sought to present. In addition, Dustex presented its evidence to three arbitrators who wrote the Arbitration Award unanimously and there is no allegation that the other two arbitrators did not understand or did not listen to the evidence. Young's lack of note taking, mixing up counsel for Dustex and CFU and any other misbehavior that Dustex alleges does not support a conclusion that Dustex was "deprived of a fair hearing." *Id*. In addition, with respect to Dustex's argument that Young ignored or denied Dustex's motions or objections "simply because he could not hear," Brief in Support of the Motion to Vacate at 14, Dustex does not provide evidence showing that any objection prevented Dustex from presenting evidence "pertinent and material to the controversy," depriving Dustex of a fair hearing. *See* 9 U.S.C. § 10(a)(3). Accordingly, the Motion to Vacate is denied to the extent it requests that the court vacate the Arbitration Award because of Young's alleged misconduct.

27

### VIII.  MOTION TO CONFIRM

In the Motion to Confirm, CFU argues that there are no grounds to vacate the Arbitration Award and, therefore, the court must confirm the Arbitration Award.  In the Resistance to the Motion to Confirm, Dustex asserts that the court should deny the Motion to Confirm because the court should grant the Motion to Vacate for the reasons set forth in the Motion to Vacate.  As discussed above, the court has determined that there is no reason pursuant to 9 U.S.C. § 10 to vacate the Arbitration Award.  Accordingly, the court finds it appropriate to confirm the Arbitration Award and grant the Motion to Confirm.

### IX.  CONCLUSION

In light of the foregoing, **IT IS HEREBY ORDERED THAT** Plaintiff and Counter Defendant Dustex Corporation's "Motion to Vacate Arbitration Award" (docket no. 3) is **DENIED**.  Defendant and Counter Claimant Board of Trustees of the Municipal Electric Utility of the City of Cedar Falls, Iowa's "Motion to Confirm Arbitration Award"(docket no. 23) is **GRANTED**.  The Clerk of Court is **DIRECTED** to enter judgment in favor of Board of Trustees of the Municipal Electric Utility of the City of Cedar Falls, Iowa and against Dustex Corporation.

**DATED** this 18th day of June, 2014.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA