**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| DUSTEX CORPORATION,<br><br>    Plaintiff,<br><br>vs.<br><br>BOARD OF TRUSTEES OF THE MUNICIPAL ELECTRIC UTILITY OF THE CITY OF CEDAR FALLS, IOWA, MIRON CONSTRUCTION CO., INC. and CONTINENTAL CASUALTY CO.,<br><br>    Defendants.<br>_____<br><br>BOARD OF TRUSTEES OF THE MUNICIPAL ELECTRIC UTILITY OF THE CITY OF CEDAR FALLS, IOWA<br><br>    Counter Claimant,<br><br>vs.<br><br>DUSTEX CORPORATION,<br><br>    Counter Defendant. | No. 13-CV-2087-LRR<br><br>**ORDER** |

_____

### TABLE OF CONTENTS

*I.*    *INTRODUCTION*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.*   *PROCEDURAL HISTORY*.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*III.*  *SUBJECT MATTER JURISDICTION* .. . . . . . . . . . . . . . . . . . . . . . . *2*

*IV.*  *FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

| | | |
|---|---|---|
| V. | *SUMMARY OF ARBITRATION PANEL'S FINDINGS* . . . . . . . . . . . . . . . | 7 |
| VI. | *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 9 |
| | A. *Parties' Arguments* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 9 |
| | B. *Application*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 10 |
| VII. | *CONCLUSION*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 12 |

## I. INTRODUCTION

The matter before the court is Defendant and Counter Claimant Board of Trustees of the Municipal Electric Utility of the City of Cedar Falls, Iowa's ("CFU") "Motion for Attorney's Fees and Costs" ("Motion") (docket no. 37).

## II. PROCEDURAL HISTORY

On December 30, 2013, Dustex Corporation ("Dustex") filed a Complaint (docket no. 2) against CFU, Miron Construction Co., Inc. ("Miron") and Continental Casualty Company ("CNA"). On December 31, 2013, Dustex filed a "Motion to Vacate Arbitration Award" (docket no. 3). On February 28, 2014, CFU filed a "Motion to Confirm Arbitration Award" (docket no. 23). On June 18, 2014, the court denied the "Motion to Vacate Arbitration Award" and granted the "Motion to Confirm Arbitration Award." June 18, 2014 Order (docket no. 32) at 28. On July 1, 2014, CFU filed the Motion. On July 9, 2014, Dustex filed a Resistance (docket no. 38). On July 18, 2014, CFU filed a Reply (docket no. 41).

## III. SUBJECT MATTER JURISDICTION

The parties do not dispute that the court has diversity jurisdiction over the instant matter. The parties to an arbitration agreement must have an affirmative agreement providing for judicial confirmation of an arbitration award for a federal court to have confirmation authority under 9 U.S.C. § 9. The Contract between CFU and Miron (docket no. 27-4) provides the following:

> All claims, disputes and other matters in question between [CFU] and [Miron] arising out of or relating to the Contract

> . . . or the breach thereof . . . will be decided by arbitration
> . . . . The award rendered by the arbitrators will be final,
> judgment may be entered upon it in any court having
> jurisdiction thereof.

Contract at 80. The court is satisfied that it has diversity jurisdiction over this case because complete diversity exists between the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332 ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ."). For purposes of diversity jurisdiction, CFU is a citizen of Iowa. Dustex is a North Carolina corporation with its principal place of business in Georgia. Miron is a Wisconsin corporation with its principle place of business in Neenah, Wisconsin. CNA is an Illinois corporation with its principle place of business in Chicago, Illinois.

## IV. FACTUAL BACKGROUND

The court accepts the arbitration panel's findings of facts. *See* Arbitration Award (docket no. 3-5) at 1-5. The facts of this case are summarized as follows:

The underlying dispute arises from a project to furnish a new filter system for the exhaust-gas stream from a stoker-fired boiler (Unit #6) ("the project"). CFU entered into a contract with Brown Engineering Co. ("Brown") on April 13, 2005, for Brown to "provide professional services relating to the engineering design and construction management involved in a project to install a fabric filter (baghouse) on Streeter Unit 6." Cedar Falls Utilities Professional Services Agreement (docket no. 3-6) at 1.

In 2006, CFU initiated public bidding for a contractor to build the project. Miron submitted a bid that included a proposal from Dustex, its subcontractor. On August 10, 2006, CFU entered into the Contract with Miron to complete the project for a price of $3,350,000 based on the drawings and specifications that Brown created. Arbitration Award at 2. The Contract provides that Miron, referred to as CONTRACTOR in the

3

Contract, shall

> complete all Work as specified in the Contract Documents. The Work is generally described as follows: streeter station unit no. 6 environmental upgrade—fabric type dust collector addition[.]

Contract at 1 (emphasis omitted). In addition, the Contract states:

> The Project has been designed by the engineering staff of Brown Engineering Company, Des Moines, Iowa, who are hereinafter called ENGINEER and who assumes all duties and responsibilities and have the rights and authority assigned to ENGINEER in the Contract Documents in connection with completion of the Work in accordance with the Contract Documents.

*Id.* The Contract Documents "comprise the entire agreement" between CFU and Miron, consisting of the eleven items enumerated in the Contract. *Id.* at 4.

The Contract Documents also provide for the resolution of "[a]ll claims, disputes and other matters in question between [CFU] and [Miron] arising out of or relating to the Contract Documents or the breach thereof" to be "decided by arbitration." *Id.* at 80. Additionally, "[t]he award rendered by the arbitrators will be final, judgment may be entered upon it in any court having jurisdiction thereof, and it will not be subject to modification or appeal." *Id.*

On February 2, 2007, Miron and Dustex entered into a Purchase Agreement for Dustex's work on the project. Purchase Agreement (docket no. 27-5). Dustex agreed to build the critical component of the filter system, the dust collection "baghouse," which is a series of hundreds of sixteen-inch, tube-shaped filters housed in four steel modules. The baghouse system includes a sophisticated, automated air system to pulse clean subsets of bag filters while the balance remains in operation. Dustex sized the components of the proprietary filter system based on a performance specification contained in the Contract Documents. In addition, Dustex elected to produce a bottom-flow, rather than a cross-flow, design for the pulse-cleaning system. When the filter bags clog with ash, the

4

upstream exhaust steam pressure increases until it reaches levels unsafe for boiler operation and shuts down the boiler and associated generator. The effectiveness of a fixed filter area is dependent on several factors, including the volume of exhaust gas that must be processed per minute of operation.

The Contract Documents set forth the design parameters for the system and anticipated four equally sized filter modules, one of which was designated as a spare to allow for off-line maintenance and cleaning. The Contract required capacity for any three modules to accommodate the gas volume anticipated by CFU as provided for in the Contract Documents. In addition, the Contract Documents required Miron to size all equipment in the system, including the baghouse, for a maximum flue-gas flow rate of 93,000 actual cubic feet per minute ("ACFM"). The Contract Documents also required Miron to guarantee baghouse performance based on specific fuel, inlet dust loading and a flue-gas flow of 80,000 ACFM at 350 degrees Fahrenheit. The baghouse was required to operate under those conditions with a maximum draft loss, or differential pressure, of six inches w.g. (water gauge) before cleaning and at 99% particulate collection efficiency. The Contract Documents further required Miron to hire a third party to conduct performance tests of the system after thirty days or more of continuous operation of the baghouse. There is no evidence that Miron ever hired a third party to conduct such testing and no performance test was ever run after thirty continuous days of baghouse operation.

In the Purchase Agreement, Dustex intended and agreed to satisfy the performance guarantee with three modules on-line and a fourth module serving as a spare.

The project was completed in the summer of 2007, however, it has never operated to CFU's satisfaction. CNA underwrote a performance bond assuring Miron's performance to CFU with a penal sum of $3,350,000. Accordingly, CNA is subject to the same claims and defenses as its principal, Miron. Arbitration Award at 2.

On August 18, 2009, Miron filed a Demand for Arbitration/Mediation Form (docket

5

no. 27-6), asserting a claim against CFU for $475,000 in damages, the unpaid amount on the Contract. On September 2, 2009, CFU filed an Answering Statement (docket no. 27-7) denying Miron's claim and asserting a counter claim for $1,461,000 in damages. On December 3, 2010, CFU filed a Petition (docket no. 3-4) in the Iowa District Court for Black Hawk County, Case No. EQCV114721, seeking to compel Dustex to join the arbitration action, which the Iowa District Court for Black Hawk County granted. On July 5, 2011, the American Arbitration Association ("AAA") sent counsel for Miron, CFU and Dustex a letter (docket no. 27-12) listing the roster of arbitrators and their resumes from which the parties could select a panel of three arbitrators and noting that, "[a]bsent an agreement of the parties, each party shall independently strike the names objected to, number the remaining names in order of preference and return the list to the [AAA]." July 5, 2011 Letter at 2. The July 5, 2011 Letter further stated that if the parties failed to reach an agreement or return the list by the deadline, "the arbitrators will be appointed as authorized in the Rules." *Id*. On October 17, 2011, the AAA sent counsel for Miron, CFU and Dustex a letter (docket no. 27-13) providing the parties with a second list of arbitrators to select from. On December 16, 2011, the AAA sent counsel for Miron, CFU and Dustex a letter (docket no. 27-14) stating that it had "appointed Jerome V. Bales, Wyatt A. Hoch, and Marshall P. Young as arbitrators." December 16, 2011 Letter at 1. In addition, the December 16, 2011 Letter directed the parties to "advise the [AAA] of any objections to the appointment of" the arbitrators. *Id*. No party objected to the appointment of the arbitrators at any point during the proceedings.

On May 15, 2012, CFU filed a Second Amended Statement of Claims (docket no. 27-19) seeking damages in "an amount in excess of $2,000,000," as well as liquidated damages. Second Amended Statement of Claims at 5. On December 7, 2012, CFU filed a Third Amended Statement of Claims (docket no. 27-26) seeking damages "in an amount in excess of $6,500,000," as well as liquidated damages. Third Amended Statement of

6

Claims at 5. The arbitration hearing began on January 21, 2013, and the panel heard evidence from January 21 through January 25, 2013; January 28 through January 29, 2013; April 21 through April 23, 2013 and August 26 through August 27, 2013. CFU submitted a Post-Hearing Brief on October 8, 2013 (docket no. 27-41). On that same date, Miron and CNA also submitted a Post-Hearing Brief (docket no. 27-42).

## V. SUMMARY OF ARBITRATION PANEL'S FINDINGS

On November 6, 2013, the panel of AAA arbitrators issued an Arbitration Award in favor of CFU. The panel made the following findings:

First, with respect to CFU's claims against Miron, the panel found Miron liable to CFU for $274,053.17 in liquidated damages and $33,439.63 for automation of the ash conveyancing system. In addition, the panel found that Dustex, Miron's subcontractor, intended and agreed to install four equally sized filter modules, one of which was designated as a spare to allow for off-line maintenance and cleaning. Second, the panel found that Miron breached the Contract with CFU because: (1) Dustex sized the baghouse for a gas flow rate of 80,000 ACFM, below the 93,000 ACFM rate that the Contract required; and (2) Dustex admitted that the baghouse as installed needed to operate with all four modules on-line, rather than with three and one spare, to comply with the Contract. Third, the panel found that Miron breached an express warranty in the Contract that "all Work will be in accordance with the Contract Documents and will not be defective," Contract at 65 (emphasis omitted), and is liable to CFU pursuant to this alternative theory. Finally, the panel found that Miron is entitled to a credit from CFU for $420,872.96, the unpaid balance on the Contract.

Next, the panel addressed CFU's claims against Dustex. First, the panel found that CFU is an intended third-party beneficiary of the Purchase Agreement between Miron and Dustex. The panel found that Dustex breached the Purchase Agreement because the baghouse that it installed did not conform with the specifications set forth in the Contract.

7

Second, the panel found that CFU is entitled to damages against Dustex because Dustex breached the indemnification provision of the Purchase Agreement and the indemnification provision of the Contract that was incorporated into the Purchase Agreement, which requires Dustex to indemnify CFU. The Purchase Agreement includes an indemnification provision that provides:

> To the fullest extent permitted by law, [Dustex] agrees to hold harmless and defend [CFU] and Miron . . . from any and all claims, demands, and judgments, including attorney's fees, and to indemnify and reimburse [CFU] and Miron . . . for any and all expenses, damage, or liability incurred by [CFU] or Miron . . . , whether directly or indirectly caused in whole or in part by [Dustex], on account of or in connection with any material furnished by [Dustex] under this [Purchase] Agreement, or by any person, firm, or corporation to whom any portion of the material is let or sublet by [Dustex].

Purchase Agreement at 9. The Contract, incorporated into the Purchase Agreement by reference, also requires Dustex to indemnify CFU for all "claims, costs, losses and damages" resulting from any defective work. Contract at 74. These costs include "all fees and charges of engineers, architects, attorneys and other professionals and all court or arbitration or other dispute resolution costs." *Id.* at 79. Accordingly, the panel found that CFU is entitled to recover damages resulting from Dustex's breach of these indemnification provisions. The panel also found that CFU is not entitled to recover against Dustex on theories of equitable indemnity or professional negligence.

Finally, the panel provided its damages calculations. The panel found that CFU is entitled to recover the following damages from Miron and CNA: (1) $274,053.17 in liquidated damages; (2) $33,439.63 that was spent to hire another contractor to complete automation of the ash conveying system that Miron left unfinished; (3) $3,419,697.29 to correct the baghouse; and (4) less the remaining $420,872.96 that CFU did not pay Miron under the Contract, resulting in a total damages amount of $3,306,317.13. The panel

found that CFU is entitled to recover from Dustex, jointly and severally with Miron and CNA, $3,419,697.29 to correct the baghouse. Finally, the panel held that Miron and Dustex must pay $171,114.88 for the AAA's fees and expenses and $23,350.00 for the AAA's administrative fees and expenses. The panel provided that Miron, Dustex and CNA must pay the award within ten days after the date that the last arbitrator signed the Arbitration Award, which was on November 6, 2013.

## VI. ANALYSIS

### A. Parties' Arguments

In the Motion, CFU seeks $20,767.00 in attorney's fees and $167.93 in costs that it incurred over the course of the confirmation/vacatur proceedings. CFU asserts that it is entitled to these fees and costs based on the Contract and Iowa law, which authorizes attorney's fees when provided for by contract. Brief in Support of the Motion (docket no. 37-1) at 1 ("CFU's claim for attorney's fees is based on the Contract Documents, which were incorporated into the agreement between Miron . . . and Dustex . . . , Dustex['s] written promise to indemni[f]y CFU, and Iowa law authorizing an award of attorney's fees, when the agreement so provides."). In the Reply, CFU makes additional arguments in support of its assertion that the fees that it seeks are reasonable.

In the Resistance, Dustex argues that the court should deny the Motion because CFU seeks fees in an amount that is unreasonable. Dustex also contends that CFU has not provided sufficient evidence to show that the rates requested for their attorney's fees are in line with those of lawyers providing similar services because "CFU did not submit any other evidence besides its own affidavit." Resistance at 3. Dustex asserts that the rates that CFU's counsel charged "are far greater than the prevailing rate in Iowa for this type of case." *Id*. Finally, Dustex contends that the legal services on which the attorney's fee request is based "are the identical matters listed by [CFU's counsel] in" CFU's Motion for Attorney's fees in a related case, *Board of Trustees of the Municipal Electric Utility of the*

*City of Cedar Falls, Iowa v. Miron Construction Co., Inc. et al.*, 13-cv-2080-LRR, and that much of the research and filings in the two cases overlap. *Id.* at 4. It follows, then, according to Dustex, that CFU is seeking duplicative attorney's fees. *Id.*

### B. Application

At the outset, the court notes that there is a parallel case to the instant one, *Board of Trustees of the Municipal Electric Utility of the City of Cedar Falls, Iowa v. Miron Construction Co., Inc. et al.*, Case No. 13-CV-2080-LRR. In that case, CFU filed a Motion to Confirm (13-CV-2080-LRR, docket no. 12) and Miron and CNA filed a Motion to Vacate (13-CV-2080-LRR, docket no. 19). Once the court granted the Motion to Confirm and denied the Motion to Vacate (13-CV-2080-LRR, February 26, 2014 Order docket no. 26), CFU filed a Renewed Motion for Attorney's Fees (13-CV-2080-LRR, docket no. 28), renewing the Motion for Attorney's Fees (13-CV-2080-LRR, docket no. 23) that it filed prior to the court's confirmation of the Arbitration Award. On April 15, 2014, the court denied CFU's Motion for Attorney's Fees and Renewed Motion for Attorney's Fees. Case No. 13-CV-2080-LRR, April 15, 2014 Order (docket no. 42). In the April 15, 2014 Order addressing whether CFU was entitled to attorney's fees from Miron pursuant to the Contract, the court stated:

> The Contract states that "[Miron] shall pay all claims, costs, losses and damages caused by or resulting from" the correction or removal of defective work. Contract at 74. The Contract defines "claims, costs, losses and damages" as including "all fees and charges of . . . attorneys and other professionals and all court or arbitration or other dispute resolution costs." *Id.* at 79. However, the Contract also provides for the resolution of "[a]ll claims, disputes and other matters in question between [CFU] and [Miron] arising out of or relating to the Contract documents or the breach thereof" to be "decided by arbitration." *Id.* at 80.
>
> . . . [T]he Contract provision requiring "all . . . disputes . . . arising out of or relating to" the Contract to be decided by arbitration is broad and indicates that the parties intended the arbitration provision to reach all of the parties'

10

> disputes arising out of or relating to the Contract. *See Daisy Mfg. Co. v. NCR Corp.*, 29 F.3d 389, 393 (8th Cir. 1994) (describing an arbitration clause that covered "any controversy or claim" related to the contract as "broad"); *see also PRM Energy Systems, Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 837 (8th Cir. 2010) (stating that broad arbitration clauses can encompass disputes that "simply touch matters covered by the arbitration provision" (quoting *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1199 (8th Cir. 2008)) (internal quotation marks omitted)). . . . Because this dispute over post-arbitration attorney's fees "aris[es] out of or relat[es] to" provisions in the Contract, specifically, the provision defining "claims, costs, losses and damages" as including "all fees and charges of . . . attorneys and other professionals and all court or arbitration or other dispute resolution costs," Contract at 79, the issues raised in the Motion [for Attorney's Fees] and Renewed Motion [for Attorney's Fees] should be resolved through arbitration. *See, e.g.*, *Menke*[*v. Monchecourt*], 17 F.3d [1007,] 1010 [(7th Cir. 1994)] (holding that the district court did not err in not awarding post-arbitration attorney's fees incurred in a confirmation proceeding when the parties' contract stated that "any dispute" arising out of the contract was to be settled through arbitration); *Hannibal Pictures v. Les Films de l'Elysee,* 2012 WL 6608595, *3, 2012 U.S. Dist. LEXIS 179704 (C.D. Cal. Dec. 18, 2012) (denying the petitioner's request for attorney's fees because "the parties agreed to resolve 'any dispute' under the agreement in arbitration" and it would contravene the parties' agreement if the court awarded attorney's fees instead of directing the parties to submit the dispute to arbitration); *see also Schlobohm v. Pepperidge Farm, Inc.*, 806 F.2d 578, 581 (5th Cir.1986) ("[W]here the parties made an agreement intended to avoid court litigation by resolving the entire dispute through arbitration, intervention by the court to award additional relief would be inconsistent with the language and policy of the [FAA].").

Case No. 13-CV-2080-LRR, April 15, 2014 Order at 13-14. Accordingly, the court denied CFU's Motion for Attorney's Fees and Renewed Motion for Attorney's Fees. *Id.* at 15.

The Motion seeks nearly the same relief as CFU's Motion for Attorney's Fees and

11

Renewed Motion for Attorney's Fees in Case No. 13-CV-2080-LRR, the request is based on the same Contract as that in Case No. 13-CV-2080-LRR and the court already denied the request in Case No. 13-CV-2080-LRR. CFU provides no justification for why this Motion should be addressed by the court when the court already ruled that attorney's fees should be left for the arbitration panel to decide pursuant to the Contract. In fact, neither party addresses the fact that the court already denied a motion nearly identical to the instant Motion in the parallel case, Case No. 13-CV-2080-LRR. However, in light of the record, the court finds that the parties agreed under the Contract to resolve disputes over attorney's fees in arbitration.

### VII. CONCLUSION

In light of the foregoing, Defendant and Counter Claimant Board of Trustees of the Municipal Electric Utility of the City of Cedar Falls, Iowa's "Motion for Attorney's Fees and Costs" ("Motion") (docket no. 37) is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 24th day of July, 2014.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA